IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**ALLEACHI MAE JEFFERSON,**

    **Plaintiff,**

vs.                                              Case No. 4:11cv318-WCS

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

_____ /

## MEMORANDUM OPINION

This is a social security case referred to me upon consent of the parties and reference by District Judge Hinkle. Doc. 7. It is concluded that the decision of the Commissioner should be affirmed.

**Procedural status of the case**

Plaintiff, Alleachi Mae Jefferson, applied for disability insurance benefits. She appears before this court without an attorney. Her last date of insured status for disability benefits is June 30, 2012. R. 24. Plaintiff alleges disability due to back pain and mental problems, with onset on January 11, 2007. Plaintiff was 50 years of age on

the date of the administrative hearing, has a high school education with some college, and has past relevant work as a school bus driver. R. 56-57.

At step 2, the Administrative Law Judge found that Plaintiff has the following "severe" impairments: sprain or strain of her cervical and lumbar spine; right shoulder laboral tear; obesity; and depressive disorder. R. 24. He found that she has the residual functional capacity to do a limited range of light work, cannot perform her past relevant work as a school bus driver, but can perform other work in the national economy (ticket taker, gate guard, parking lot cashier, shipping and receiving clerk, and companion), and thus is not disabled. R. 25-32.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).[1]

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

---

support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Legal analysis**[2]

Plaintiff challenges the decision of the Appeals Council, which considered new evidence.  She contends that the Appeals Counsel improperly discounted this new evidence, the residual functional capacity opinions of her treating physician, Eron Manusov, M.D., and her treating psychiatrist, Judy Ognibene, M.D.  Doc. 13.

The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  This is so because treating physicians:

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the

---

[2] Information about prescribed drugs are from PDRhealth™, PHYSICIANS' DESKTOP REFERENCE, found at http://www.pdrhealth.com/drugs/drugs-index.aspx.

Case No. 4:11cv318-WCS

> objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).  Important to the determination of whether there is a "detailed, longitudinal picture" of impairments is the length of the treatment relationship, the frequency of examination, the extent of the knowledge of the treating source as shown by the extent of examinations and testing, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and whether the treating source is a specialist with respect to the particular medical issues.  20 C.F.R. § 404.1527(d)(2)-(5).

The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.  Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004).  "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).  Good cause to afford less weight to the opinion of a treating physician exists "when the: (1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Winschel, 631 F.3d at 1179; Phillips v. Barnhart, 357 F.3d 1232, 1240-1241(11th Cir. 2004); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.").

On February 8, 2010, Dr. Eron Manusov, of the Neighborhood Health Services, Inc., (NHS), filled out a "medical source statement' checklist. R. 617-623. He said he had had contact with Plaintiff since May 20, 2008, but the frequency of contacts was not stated. R. 617. Dr. Manusov said that Plaintiff complained of pain in her joints, legs, knees, and feet, worse in the morning, and said that she uses a walker. *Id*. He said that the objective signs of the pain were impaired sleep and muscle spasm, but *not* joint warmth, deformity, or instability. *Id*. He said that he did not find tenderness, trigger points, swelling, weakness, atrophy, or a positive straight leg raising test as evidence of pain. *Id*. He found that Plaintiff uses a cane (not a walker). R. 618. He said that emotional factors contributed to Plaintiff's experience of pain, and that Plaintiff suffers from depression and anxiety. *Id*. He said that her pain was severe enough to constantly interfere with her attention and concentration, that she had marked limitation in ability to deal with work stress, and that her medications caused drowsiness. *Id*. Dr. Manusov thought that Plaintiff could sit only an hour before having to stand and walk, could return to sitting after standing or walking for 15 minutes, but could stand or walk for only 15 minutes and cumulatively could stand and walk for only one hour. R. 618-620. He also said that Plaintiff could sit for only one hour in an eight hour day. R. 619. He said that Plaintiff needed to lie down four hours in an eight hour work day. R. 620. He said she was limited to no more than occasionally lifting and carrying one to five pounds. R. 621. He said she could only occasionally use her hands repetitively. R. 621-622. He said that Plaintiff needs a cane to walk on all surfaces. R. 622. He said

that Plaintiff's impairments would result in absence from work more than three times a month.  R. 623.

The Appeals Council concluded that "Dr. Manusov's opinions are not entitled to significant weight."  R. 5.  The first reason for not according the opinion significant weight was that Dr. Manusov did not have a significant treating relationship with Plaintiff.  *Id.*  The Council noted that although Dr. Manusov said he had been treating Plaintiff since May 20, 2008, the record does not support that assertion.  *Id.*  Instead, the medical record only shows that Plaintiff first went to the Neighborhood Health Services on May 20, 2008, but there was no evidence that Plaintiff was seen by Dr. Manusov until February 8, 2010, the day he rendered his opinion.  *Id.*  The Council noted that he then saw Plaintiff in March, 2010.[3]  *Id.*

The first basis for discounting the opinion of Dr. Manusov is supported by substantial evidence in the record.  Plaintiff was first seen at NHS on May 20, 2008, for eye glasses and upper dentures, but she was not seen by Dr. Manusov.  R. 584.  She was seen by Janette Baker, ARNP.  R. 586.  Nurse Baker noted that she was under the care of Apalachee Mental Health for bipolar disorder.  R. 584.  A review of systems noted back pain and muscle weakness, and depression and anxiety, but was negative for finger or joint pain.  R. 585.

Plaintiff was seen again at NHS by Nurse Baker on June 3, 2008, for medication refills.  R. 587-588.  Her blood sugar was 580, uncontrolled, and Nurse Baker noted that

---

[3]  That was after he rendered his opinion, however, and could not have been a basis for his opinion.

Case No. 4:11cv318-WCS

she had failed to mention diabetes at the first encounter, further noting that she "just laughed" when the Nurse reminded her that she had only sought eye glasses and dentures a month before. R. 587. Plaintiff was cooperative and did not appear to be acutely ill. *Id*. A personal history of noncompliance with medical treatment was noted, and she had been off diabetic medications for more than 6 months. R. 588.

Plaintiff was seen again in NHS by Nurse Baker and others on June 10, 2008, June 27, 2008, August 20, 2008, October 29, 2008, December 30, 2008, March 13, 2009, April 14, 2009, May 11, 2009, May 22, 2009, and an undated record. R. 189-590, 591-592, 593-595, 596-598, 600, 601, 602, 603, 604, 605. She refused to take insulin as recommended on June 27, 2008. R. 591. Dr. Manusov did not sign any of these treatment records, and the records reflect that treatment on each occasion was by Nurse Baker or by another Nurse Practitioner.

Plaintiff was first seen by Dr. Manusov on the day of the opinion, February 8, 2010. R. 629. He noted that she was positive for joint pain, but was negative for muscle weakness or back pain. *Id*. He said that she had stiff knees and used a walking stick to ambulate. *Id*. She told him that her pain was worse in the arm, but improved during the day. *Id*. He noted that she was positive for depression, but negative for anxiety. *Id*. She told Dr. Manusov that she wanted to get SSI. *Id*. She told him that her husband had had a stroke, she was under lot of financial stress, and she felt bad. *Id*. His diagnosis was benign hypertensive kidney disease, poorly controlled diabetes II with unspecified complications, and depression, not otherwise specified. R. 630. There

was no mention of joint or back pain in the diagnosis. *Id.* Dr. Manusov said that Plaintiff's depression was "mostly likely the key disability issue." *Id.*

Plaintiff was also seen by Dr. Manusov for "routine follow-up" on March 29, 2010. R. 631. Vital signs were taken, R. 631-632, but there is no record of any objective testing. R. 631-633. Dr. Manusov said that Plaintiff had "no complaint" and simply needed her medications refilled. R. 633. Dr. Manusov's diagnosis included diabetes II with unspecified complications, benign hypertension, hyperlipidemia, and unspecified bipolar disorder, but he made no findings about back pain, and the bipolar disorder diagnosis was historical only. R. 634, 631. In summary, the determination by the Appeals Council that Dr. Manusov did not have an adequate "longitudinal" treating relationship with Plaintiff when he rendered his residual functional capacity opinion is supported by substantial evidence in the record and is a significant basis for discounting that opinion.

Second, the Appeals Council discounted Dr. Manusov's opinion because "Dr. Manusov offers no explanation for the limitations assessed, and the limitations are inconsistent with the objective findings from NHS and the evidence as a whole." R. 5. The Appeals Council noted that Plaintiff only sought treatment from NHS for blurry vision, depression, and diabetes, yet Dr. Manusov found her to be disabled due to chronic pain. *Id.* The Appeals Council noted that on the day of Dr. Manusov's opinion, she had only come to see him for disability paperwork and refill of medications. *Id.* The Appeals Council noted that during that encounter, Dr. Manusov speculated that her depression was the key issue for disability, yet his opinion rested upon a perception that

she had chronic pain. *Id.* These reasons are supported by substantial evidence in the record, discussed above, and are adequate reasons to discount Dr. Manusov's opinion. Thus, there was no error in the evaluation of Dr. Manusov's opinion.

The second issue before this court is whether the Appeals Council adequately evaluated the mental health assessment by Dr. Judy Ognibene. On February 23, 2009, Dr. Ognibene completed a physician's report for the Florida Retirement System for purposes of a regular disability determination pursuant to FLA. STAT. § 121.091(4)(b). R. 624-625. That statute defines disability as:

> *Total and permanent disability.*--A member shall be considered totally and permanently disabled if, in the opinion of the administrator, he or she is prevented, by reason of a medically determinable physical or mental impairment, from rendering useful and efficient service as an officer or employee.

FLA. STAT. § 121.091(4)(b). Dr. Ognibene's speciality is psychiatry. R. 624. She said that she first saw Plaintiff on July 21, 2008, and her most recent examination was on October 24, 2008, when she entered a diagnosis of schizoaffective disorder, a short period of treatment and evaluation. R. 625. She said that Plaintiff's condition had stabilized, but had not reached maximum medical improvement. *Id.* She did not think that Plaintiff was a candidate for vocational rehabilitation. *Id.* She concluded by checking a box to indicate that Plaintiff has "severe limitation of functional capacity; permanently incapable of any kind of work; totally and permanently incapable of any kind of work; totally and permanently disabled from gainful employment." *Id.*

The Appeals Council declined to rely upon Dr. Ognibene's assessment because she had only seen Plaintiff twice before, and seemed to base her assessment upon

Plaintiff's subjective statements without any explanation or clinical findings to substantiate her opinion.  R. 5.  These are adequate reasons to discount Dr. Ognibene's opinion and to give it little weight, and the reasons are supported by substantial evidence.

Plaintiff had two encounters with Dr. Ognibene at ACHS (Apalachee Community Health Services).  On July 21, 2008, Plaintiff came for a medication check.  R. 569.  Her arm was in a sling.  *Id.*  Dr. Ognibene found Plaintiff's appearance, behavior, motor activity, motor movement, mood, thought process, thought content, orientation, and memory, to be normal, good, or intact.  *Id.*  She found Plaintiff's eye contact, insight, and judgment to be fair and her speech soft.  *Id.*  Dr. Ognibene determined that Plaintiff was psychiatrically stable.  *Id.*

On October 29, 2008, Dr. Ognibene saw Plaintiff for a scheduled appointment.  R. 568.  She found Plaintiff to be without psychosis or audio or visual hallucinations.  *Id.*  Plaintiff's appearance, behavior, motor activity, eye contact, speech, affect, thought process, thought content, orientation, memory, insight, judgment, and motor movements were either normal, intact, good, or within normal limits.  *Id.*  Dr. Ognibene's diagnosis was schizoaffective disorder.  *Id.*  She also noted right shoulder pain.  *Id.*  Plaintiff was to return in three months.  *Id.*

In summary, the Appeals Council did not err in its conclusion that the findings in Dr. Ognibene's medical notes do not support Dr. Ognibene's residual functional capacity assessment.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge were based upon substantial evidence in the record and correctly followed the law.

Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **AFFIRMED** and the Clerk is directed to enter judgment for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on February 24, 2012.

                              s/    William C. Sherrill, Jr.
                              **WILLIAM C. SHERRILL, JR.**
                              **UNITED STATES MAGISTRATE JUDGE**